No. 24-12564

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

---

**JANICE ELLERY and LILIAN PATINO**,
*Plaintiffs-Appellants*,

v.

**FAY SERVICING, LLC**,
*Defendant-Appellee.*

**Appeal from the United States District Court
for the Southern District of Florida**

**No. 23-cv-60260-DAMIAN**

---

### APPELLANTS' OPENING BRIEF

---

Daniel M. Solar, Esq.
(OH Bar No. 0085632)
(admitted *pro hac vice*)
**DANN LAW**
15000 Madison Ave.
Lakewood, OH 44107
T: (216) 373-0539
F: (216) 373-0536
notices@dannlaw.com

Bruce Botsford, Esq.
(FL Bar No. 31127)
**LAW OFFICE OF BRUCE BOTSFORD, P.A.**
1005 W State Road 84 # 472
Fort Lauderdale, FL 33315-2433
T: (954) 663-7002
F: (216) 373-0536
service@botsfordlegal.com
supportleader@botsfordlegal.com
botslaw@gmail.com

*Counsel for Plaintiffs-Appellants Janice Ellery and Lilian Patino*

**CERTIFICATE OF INTEREST PERSONS**

Undersigned counsel certifies the following persons may have an interest in the outcome of this case:

1. Accardi, Sara of Bradley Arant Boult Cummings LLC, Counsel for Appellee, Fay Servicing, LLC

2. Botsford, Bruce of Bruce Botsford, P.A., Counsel for Appellants, Janice Ellery and Lillian Patino, each individually and on behalf of all others similarly situated.

3. Bradley Arant Boult Cummings LLP, Counsel for Appellee, Fay Servicing, LLC

4. Damian, Melissa, U.S. District Judge

5. Dann Law, Counsel for Plaintiffs Janice Ellery, Lillian Patino, and the Putative Class U.S.D.C. Southern District of Florida (Case No.: 23-cv-60260-DAMIAN)

6. Ellery, Janice, Appellant

7. Fay Servicing, LLC, Appellee

8. Garcia-Wood, Marina, Broward County Civil Division Judge

9. Hanson, Jacob of Bradley Arant Boult Cummings LLC, Counsel for Appellee, Fay Servicing, LLC

10. Law Office of Bruce Botsford, P.A., Counsel for Appellants, Janice Ellery and Lillian Patino, each individually and on behalf of all others similarly situated.

11. Patino, Lillian, Appellant

12. Sadlak, Kenzie N., Attorney for Defendant/Appellant, Janice Ellery (Seventeenth Judicial Circuit, Broward County, Florida, Case No.: CACA19011770)

13. Solar, Daniel M., Counsel for Plaintiffs Janice Ellery, Lillian Patino, and the Putative Class U.S.D.C. Southern District of Florida (Case No.: 23-cv-60260-DAMIAN) *pro hac vice

14. U.S. Bank Trust, N.A., as Trustee, Plaintiff (Seventeenth Judicial Circuit, Broward County, Florida, Case No.: CACA19011770)

## STATEMENT REGARDING ORAL ARGUMENT

Plaintiffs-Appellants Janice Ellery and Lilian Patino (collectively, the "Borrowers") respectfully request oral argument pursuant to Federal Rule of Appellate Procedure 34(a)(1) and Rule 28-1(c) of the Eleventh Circuit Rules. Because of the nature of the facts and law at issue, the Borrowers believe that the Court would benefit from hearing oral argument.

# TABLE OF CONTENTS

CERTIFICATE OF INTEREST PERSONS ..........................................................C-1

STATEMENT REGARDING ORAL ARGUMENT ................................................ i

TABLE OF CONTENTS.......................................................................................... ii

TABLE OF CITATIONS ........................................................................................ iv

STATEMENT OF JURISDICTION........................................................................ vii

STATEMENT OF THE ISSUES...............................................................................1

STATEMENT OF THE CASE...................................................................................1

    Nature of the Case...............................................................................................1

    Course of Proceedings and Disposition Below ...................................................2

    Statement of Facts...............................................................................................3

    Standard of Review.............................................................................................7

SUMMARY OF ARGUMENT .................................................................................7

ARGUMENT ...........................................................................................................10

    I.     FAY'S DENIAL LETTERS CONSTITUTE PROHIBITED
            DEBT COLLECTION ACTIVITY IN VIOLATION OF
            15 U.S.C. § 1692e ................................................................................10

    II.    FAY'S FAILURE TO COMMUNICATE ACCURATE
           INFORMATION CONCERNING LOSS MITIGATION
           OPTIONS CONSTITUTES A COVERED ERROR
           PURSUANT TO 12 C.F.R. § 1024.35(b)........................................15

    III.   FAY'S FAILURE TO IMPLEMENT THE SHORT SALE
           PURCHASE OFFERS CONSTITUTES A COVERED
           ERROR PURSUANT TO 12 C.F.R. § 1024.35(b) .......................17

CONCLUSION.........................................................................................................23

ADDENDUM ...........................................................................................................25

CERTIFICATE OF SERVICE ................................................................30

# TABLE OF CITATIONS

## CASES

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ....................................................7

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ....................................7

*Caceres v. McCalla Raymer, Ltd. Liab. Co.*, 755 F.3d 1299 (11th Cir. 2014) .......13

*Daniels v. Select Portfolio Servicing, Inc.*, 34 F.4th 1260 (11th Cir. 2022) ...........13

*Gburek v. Litton Loan Servicing LP*, 614 F.3d 380 (7th Cir. 2010) .......................13

*Grden v. Leikin Ingber & Winters PC*, 643 F.3d 169 (6th Cir. 2011) ....................14

*Hart v. Credit Control, LLC*, 871 F.3d 1255 (11th Cir. 2017) ...............................13

*Hunt v. Aimco Props., L.P.*, 814 F.3d 1213 (11th Cir. 2016) ..................................7

*Jones v. Wells Fargo Bank, N.A.*, Civil Action No. ELH-18-8,

    2018 U.S. Dist. LEXIS 155985 (D. Md. Sep. 12, 2018) ......................................21

*Lynch v. Wells Fargo Bank, N.A.*, No. 18-23560-CIV-MARTINEZ-OTAZO-

    REYES, 2019 U.S. Dist. LEXIS 244643 (S.D. Fla. June 18, 2019) ...................21

*Miljkovic v. Shafritz & Dinkin, P.A.*, 791 F.3d 1291 (11th Cir. 2015) ...................11

*Naimoli v. Ocwen Loan Servicing, LLC*, 22 F.4th 376 (2d Cir. 2022) ............. 19-20

*Reese v. Ellis, Painter, Ratterree & Adams, LLP*,

    678 F.3d 1211 (11th Cir. 2012) ...........................................................................13

*Renfroe v. Nationstar Mortg., LLC*, 822 F.3d 1241 (11th Cir. 2016) .......................7

*Rivas v. Midland Funding, LLC*, 842 F. App'x 483 (11th Cir. 2021) .....................11

*Simmonds v. Nationstar Mortg. LLC*, No. 5:23cv2-MW/MJF,

    2024 U.S. Dist. LEXIS 187028 (N.D. Fla. Sep. 24, 2024) ..................................16

*Sutton v. CitiMortgage, Inc.*, 228 F. Supp. 3d 254 (S.D.N.Y. 2017) .....................22

*Timson v. Sampson*, 518 F.3d 870 (11th Cir. 2008) ...................................................7

*Yentin v. Michaels, Louis & Assocs.*, No. 11-0088,

    2011 U.S. Dist. LEXIS 104711 (E.D. Pa. Sep. 14, 2011)...................................10

## STATUTES

12 U.S.C. § 2605 ......................................................................................... 15, 17

12 U.S.C. § 2617 .............................................................................................15

15 U.S.C. § 1692 .............................................................................................11

15 U.S.C. § 1692a ...........................................................................................10

15 U.S.C. § 1692e ..........................................................................1, 10-11, 13-14

## REGULATIONS

12 C.F.R. § 1024.1 ..........................................................................................15

12 C.F.R. § 1024.35 ........................................................................... 1, 15-17, 22

12 C.F.R. § 1024.39 .........................................................................................16

12 C.F.R. § 1024.41 .........................................................................................18

## OTHER AUTHORITIES

124 Stat. 1376 ................................................................................................15

78 Fed. Reg. 10696 ......................................................................... 15, 18

Official Interpretations to 12 C.F.R. § 1024.41(c)(1) ....................................... 19, 21

# STATEMENT OF JURISDICTION

Jurisdiction for this proceeding was proper in the United States District Court for the Southern District of Florida under 28 U.S.C. § 1331, because the Borrowers' claims arise under the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692, *et seq.* (FDCPA) and Real Estate Settlement Procedures Act, 12 U.S.C. §§ 2601, *et seq.* (RESPA). The district court also had supplemental jurisdiction, pursuant to 28 U.S.C. § 1367(a), to adjudicate the Borrowers' state-law claims, which are related to and form part of the same controversy created by Defendant-Appellee Fay Servicing, LLC's ("Fay") violations of the laws of the United States.

The district court granted Fay's motion to dismiss on July 10, 2024 and dismissed the case with prejudice on July 29, 2024. On August 7, 2024, the Borrowers filed a timely notice of appeal. Jurisdiction in this Court is proper under 28 U.S.C. §§ 1291 and 1294(1).

## STATEMENT OF THE ISSUES

The Borrowers present the following issues for review:

1.      Whether Fay's denial letters constitute prohibited debt collection activity in violation of 15 U.S.C. § 1692e.

2.      Whether Fay's failure to communicate accurate information concerning loss mitigation options is a covered error pursuant to 12 C.F.R. § 1024.35(b).

3.      Whether Fay's failure to implement the Borrowers' short sale purchase offers is a covered error pursuant to 12 C.F.R. § 1024.35(b).

## STATEMENT OF THE CASE

### Nature of the Case

The Borrowers' claims arise from the conduct of Fay, their mortgage servicer, in systematically refusing to implement short sale purchase offers without any meaningful review. The Borrowers fell delinquent on their mortgage loans and subsequently submitted loss mitigation applications to Fay. (Doc. 21, ¶¶ 7, 12, 15; Doc. 21-2, p. 2; Doc. 21-8, p. 2). The Borrowers requested approval from Fay for a short sale transaction to mitigate their losses by submitting purchase offers for arm's-length transactions to Fay. (Doc. 21, ¶¶ 16-18). Fay, in turn, refused to implement the short sale purchase offers, falsely claiming that the transactions were not arm's-length. (Doc. 21, ¶¶ 19-24).

The Borrowers notified Fay of this error and requested Fay issue a correction, however, Fay refused and wrongfully claimed that no error had occurred and failed to provide a detailed explanation as to why no error had occurred. (Doc. 21, ¶ 29). As attempts to have Fay correct its errors have failed, the Borrowers brought three claims against Fay for violations of the Fair Debt Collection Practices Act (FDCPA), Florida Consumer Collection Practices Act (FCCPA), and Real Estate Settlement Procedures Act (RESPA).

## Course of Proceedings and Disposition Below

On February 10, 2023, the Borrowers initiated this matter in the district court. (Doc. 1). On April 27, 2023, the Borrowers filed the operative complaint (the "Complaint"). (Doc. 21). On May 24, 2023, Fay filed a motion to dismiss the Complaint (the "Motion"). (Doc. 22). On June 21, 2023, the Borrowers filed a response in opposition to the Motion. (Doc. 25). On June 28, 2023, Fay filed a reply to the motion. (Doc. 26).

On June 26, 2024, the district court held a status conference and heard the parties' arguments concerning the Motion. (Doc. 39). On July 10, 2024, the district court granted the Motion without prejudice and dismissed the Borrowers' federal claims and declined to take supplemental jurisdiction over the Borrowers' state law claims. (Doc. 41). On July 29, 2024, the district court dismissed the case with

prejudice. (Doc. 42). On August 7, 2024, the Borrowers' filed a timely notice of appeal. (Doc. 43).

Statement of Facts

The Borrowers fell delinquent on their mortgage loans and subsequently submitted loss mitigation applications to Fay. (Doc. 21, ¶¶ 7, 12, 15; Doc. 21-2, p. 2; Doc. 21-8, p. 2). Fay in turn evaluated the Borrowers' applications and approved them to participate in a short sale. (Doc. 21, ¶ 16; Doc. 21-2, p. 2). The Borrowers requested approval from Fay for a short sale transaction to mitigate their losses. (Doc. 21, ¶ 16).

As part of this short sale approval process, the Borrowers each submitted a purchase offer for an arm's-length transaction to Fay. (Doc. 21, ¶¶ 17-18). Despite the Borrowers' purchase offers representing arm's length transactions, Fay sent correspondence in response to the same stating that the purchase offers were denied because each "transaction is not arm's-length" (the "Denials"). (Doc. 21, ¶ 19). The correspondence consisted of nothing more than a form template checklist with sixteen possible denial options. (Doc. 21, ¶ 20). Fay did not provide any further explanation as to the reasoning in the Denials as "[t]he transaction is not arm's-length" was checked-off. (Doc. 21, ¶ 20).

Fay's denials of the Borrowers' purchase offers were improper as each such denial was based upon an obvious falsehood, that the purchase offers did not

3

represent arm's-length transactions. (Doc. 21, ¶ 21). Had Fay provided an accurate reason for the denial or an explanation as to why Fay incorrectly believed the purchase offers to not represent arm's length transactions, then the Borrowers could have rectified the same and further pursue the short sales. (Doc. 21, ¶ 22). Fay's conduct has caused the Borrowers to suffer significant pecuniary and non-pecuniary damages. (Doc. 21, ¶¶ 25-30).

<u>(Facts Relevant to Janice Ellery)</u>

On or about July 1, 2022, Ellery sent, and Fay received, a complete application containing all necessary information for Fay to consider Ellery's eligibility for a short sale of her property, including a purchase offer from a third party buyer having no relation to Ellery. (Doc. 21, ¶ 34). On or about July 20, 2022, Fay sent correspondence to Ellery stating that "the purchase offer has been denied for the following reasons: The transaction is not 'arm's length'" (the "Ellery Denial"). (Doc. 21, ¶ 35; Doc. 21-1, p. 3). Fay did not provide any further explanation to support its determination. (Doc. 21, ¶ 36; Doc. 21-1, p. 3). Fay's determination that the transaction was not arm's length was plainly erroneous and misrepresented the purchase offer as Ellery has no prior relation to the individual making the purchase offer. (Doc. 21, ¶ 37).

On or about July 30, 2022, Ellery, through counsel, sent a notice of error (the "Ellery NOE") alleging that Fay committed errors and misrepresentations in

processing Ellery's short sale application and making the patently false claim the purchase offer did not represent an arm's length transaction. (Doc. 21, ¶ 38; Doc. 21-2, pp. 2-3). In response, Fay sent correspondence to Ellery dated August 5, 2022, consisting of an exact copy of the previous denial letter claiming the transaction was not arm's length. (Doc. 21, ¶¶ 40-41; Doc. 21-3, p. 2). Fay sent further correspondence dated September 12, 2022, that stated that "Fay [*sic*] records reflect that a letter of withdrawal was received from [Ellery's counsel's] law firm dated August 16, 2022 ... Fay will not provide a further response to [Ellery's counsel's] law office regarding the [Ellery NOE]" (the "Ellery Response"). (Doc. 21, ¶ 43; Doc. 21-5, p. 2). In sum, Fay never provided Ellery with a substantive response to the Ellery NOE. (Doc. 21, ¶¶ 44-45). Due to Fay's conduct, Ellery could not enter into a short sale and still has no knowledge as to the real reason the short sale was denied so as to be able to correct any such deficiencies. (Doc. 21, ¶ 46). Fay's conduct has caused Ellery to suffer significant pecuniary and non-pecuniary damages. (Doc. 21, ¶¶ 47-48).

### (Facts Relevant to Lilian Patino)

Patino sent, and Fay received, a complete application containing all necessary information for Fay to consider Patino's eligibility for a short sale of her property, including a purchase offer from a third-party buyer having no relation to Patino. (Doc. 21, ¶ 51). On or about March 8, 2021 and June 10, 2022, Fay sent

5

correspondence to Patino stating that "the purchase offer has been denied for the following reasons: The transaction is not 'arm's length'" (the "Patino Denials"). (Doc. 21, ¶ 52; Doc. 21-6, pp. 2-3). Fay did not provide any further explanation to support its determination. (Doc. 21, ¶ 53; Doc. 21-6, pp. 2-3). Apart from the date at the top of the correspondence, both of the Patino Denials are an exact copy of the other. (Doc. 21, ¶ 54; Doc. 21-6, pp. 2-3). Fay's determination that the transaction was not arm's length was plainly erroneous and misrepresented the purchase offer as Patino has no prior relation to the individual making the purchase offer. (Doc. 21, ¶ 55).

On or about July 30, 2022, Patino, through counsel, sent a notice of error (the "Patino NOE") alleging that Fay committed errors and misrepresentations in processing Patino's short sale application and making the patently false claim the purchase offer did not represent an arm's length transaction. (Doc. 21, ¶ 57; Doc. 21-7, pp. 2-4). In response, Fay sent correspondence to Ellery dated September 23, 2022, that acknowledged that Patino raised the errors and merely stated that "[t]he letter stated that the purchase offer was denied due to it not being an arms-length transaction." (Doc. 21, ¶¶ 59-60; Doc. 21-8, p. 3). Fay never provided Patino with a statement of reasons as to why the Patino Denials' statements that the purchase was not an arms-length transaction was not made in error, Fay simply referred to the contents of the Patino Denials. (Doc. 21, ¶¶ 61-65; Doc. 21-8, pp. 2-4). Due to Fay's

conduct, Patino could not enter into the short sale and still has no knowledge as to the real reason the short sale was denied so as to be able to correct any such deficiencies. (Doc. 21, ¶ 66). Fay's conduct has caused Patino to suffer significant pecuniary and non-pecuniary damages. (Doc. 21, ¶¶ 67-68).

<u>Standard of Review</u>

This Court reviews an order granting a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure *de novo*, "'accepting the allegations in the complaint as true and construing them in the light most favorable to the plaintiff.'" *Renfroe v. Nationstar Mortg., LLC*, 822 F.3d 1241, 1243 (11th Cir. 2016) (quoting *Timson v. Sampson*, 518 F.3d 870, 872 (11th Cir. 2008) (*per curiam*)). "[T]o survive a motion to dismiss, a complaint need only present sufficient facts, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A 'claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Hunt v. Aimco Props., L.P.*, 814 F.3d 1213, 1221 (11th Cir. 2016) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

**SUMMARY OF ARGUMENT**

The district court erred in granting Fay's Motion to Dismiss on the grounds that: (1) Ellery could not establish that she was the object of debt collection activity

prohibited by the FDCPA; and (2) The Borrowers' notices of error did not trigger Fay's response obligations pursuant to RESPA and Regulation X.

The FDCPA prohibits false, deceptive, or misleading representations or means in connection with the collection of any debt. Ellery sufficiently pled that Fay's conduct, in falsely stating that her short sale purchase offers were not the result of an arm's-length transaction, systematically denying the short sale purchase offers without any meaningful review, and refusing to implement the short sale purchase offers, constituted prohibited representations or means in violation of the FDCPA.

The district court instead held that Ellery must plead sufficient factual information to show that Fay's conduct was "communication" as defined by the FDCPA, when the section and subsection upon which she based her claims did not have such a requirement. Since the district court failed to apply the appropriate statutory language to Ellery's claims, the decision to dismiss Ellery's FDCPA claims should be reversed in its entirety and remanded to the district court.

RESPA and Regulation X allow mortgage loan borrowers to assert errors with their mortgage loan if they fall within ten enumerated categories or the "catch-all" provision for errors related to the servicing of a mortgage loan. Upon receipt of a notice of error, the mortgage servicer must either correct the errors or, after performing a reasonable investigation, issue a notice explaining in detail why it determined that the alleged errors were not in fact errors. The Borrowers each sent

a notice of error to Fay asserting that Fay failed to communicate accurate information concerning loss mitigation options and failed to properly implement the Borrowers' short sale purchase offers. Fay refused to correct these errors and did not provide a detailed statement of reasons as to why it believed that it properly determined the short sale purchase offers were not arm's-length transactions.

The district court read the notices of error as challenging the merits of Fay's loss mitigation determination and reasoned that Fay did not need to respond to the notices of error. However, there is no support for this conclusion in the allegations of the Complaint or the exhibits attached thereto. Fay completed an evaluation of the Borrowers for all loss mitigation options and approved them to participate in a short sale, and afterwards issues arose with the specifics of short sale purchase offers.

The decision below wholly ignored that the notices of error asserted a covered error concerning the communication of accurate information about loss mitigation options, and instead focused solely on the "catch-all" provision. Nonetheless, the Borrowers' errors concerning the processing of a loss mitigation option fall within the "catch-all" provision because they are related to the servicing of a mortgage loan and have nothing to do with Fay's prior evaluation of their loss mitigation applications and decision to approve them to participate in a short sale. Since the district court's decision overlooks the substantive body of the notices of error, the

decision to dismiss the Borrowers' RESPA and Regulation X claims should be reversed in its entirety and remanded to the district court.

## ARGUMENT

## I. FAY'S DENIAL LETTERS CONSTITUTE PROHIBITED DEBT COLLECTION ACTIVITY IN VIOLATION OF 15 U.S.C. § 1692e

Debt collections are generally prohibited from using false, deceptive, or misleading ***representations or means*** in connection with the collection of any debt. 15 U.S.C. § 1692e; *see also* 15 U.S.C. § 1692e(10). Neither representations nor means are defined in the FDCPA. The FDCPA does define "communication" as "the conveying of information regarding a debt directly or indirectly to any person through any medium." 15 U.S.C. § 1692a(2).

"While the FDCPA does not define 'representation,' *see* § 1692a, Black's Law Dictionary explains that a 'representation' is '[a] presentation of fact — either by words or by conduct — made to induce someone to act, esp. to enter into a contract; esp., the manifestation to another that a fact, including a state of mind, exists.'" *Yentin v. Michaels, Louis & Assocs.*, No. 11-0088, 2011 U.S. Dist. LEXIS 104711, at *36-37 (E.D. Pa. Sep. 14, 2011) (citing Black's Law Dictionary 1415 (9th ed. 2009)). Merriam-Webster's dictionary defines "means" as "something enabling one to achieve a desired end." While not all that helpful, these definitions suggest that a "representation" or a "means" are broader than a "communication," in that they include conduct in addition to words.

A simpler approach is to examine the purpose of the FDCPA, one of which is to "eliminate abusive debt collection practices by debt collectors." 15 U.S.C. § 1692(e). Guidance from this Court instructs that restrictions on the application of the FDCPA should be expressly stated in the statute itself. *Miljkovic v. Shafritz & Dinkin, P.A.*, 791 F.3d 1291, 1304 (11th Cir. 2015) ("[T]he [FDCPA] applies to the litigating activities of lawyers … subject to the limited exceptions Congress has chosen to include in the statute."). This Court has recognized that the definition of "communication" is "irrelevant" to claims of false representations pursuant to 15 U.S.C. § 1692e. *Rivas v. Midland Funding, LLC*, 842 F. App'x 483, 488-489 (11th Cir. 2021) ("Rivas is not suing over a 'communication.' That word—although broadly defined in the definition section of the statute—is not used in the substantive sections under which Rivas has brought his claims."). The same reasoning should likewise apply to "means" used to collect a debt. The FDCPA does not limit 15 U.S.C. §§ 1692e or 1692e(10) to "communications," like the district court held.

In the instant matter, Ellery's FDCPA claim is based on false, deceptive, or misleading representations and means in connection with the collection of her mortgage loan debt, and her claim should have been examined in that context, instead of through the more narrow context of a "communication." The district court impermissibly focused on the definition of a "communication" instead of

determining if Fay's conduct qualified as representations or means in connection with the collection of Ellery's mortgage loan.

Ellery alleged in the Complaint that Fay "made false representations to Ellery … in the collection of a debt by issuing the Denials containing the patently false claim that the purchase offers did not represent arm's-length transactions" and "Fay … violated 15 U.S.C. §1692e(10) in issuing the Denials." (Doc. 21, ¶¶ 81-82). Fay's conduct constitutes a false, misleading, or deceptive representation as it a presentation of fact by both words (falsely claiming that the offers were not arm's-length) and means (issuing the Denials and refusing to process the purchase offers) made to induce Ellery into forgoing the short sale opportunity and settling her debt in another way (payment or allowing Fay to foreclose on her property and collect a possible deficiency judgment). Fay's conduct in failing to explain why it believed that Ellery's short sale purchase offer was not an arm's length transaction and refusing to work with her to implement her short sale purchase offer prevented Ellery from rectifying any potential issues with the short sale purchase offer. (Doc. 21, ¶¶ 22, 46; Doc. 21-2, p. 2).

Fay's conduct was "in connection with the collection of any debt" as it directly pertains to the amount of money that Ellery would pay or otherwise owe to the owner of her mortgage loan. As Fay's conduct readily qualifies as prohibited

"representations" and "means" as contemplated by 15 U.S.C. §§ 1692e and 1692e(10), Fay has violated the FDCPA.

Even if Ellery was required to point to a "communication" that violates the FDCPA, the Ellery Denials readily qualify under that definition. "In order to be considered a communication, the only requirement of the information that is to be conveyed is that it must be regarding a debt." *Hart v. Credit Control, LLC*, 871 F.3d 1255, 1258 (11th Cir. 2017); *Daniels v. Select Portfolio Servicing, Inc.*, 34 F.4th 1260, 1266-1267 (11th Cir. 2022). The Ellery Denials conveyed false information concerning the underlying debt of the mortgage loan – that Fay would not settle the debt due to falsely claiming that the short sale purchase offer was not an arm's-length transaction.

In *Reese v. Ellis, Painter, Ratterree & Adams, LLP*, 678 F.3d 1211 (11th Cir. 2012), this Court adopted the Second Circuit's reasoning that "if a communication conveys information about a debt and its aim is at least in part to induce the debtor to pay, it falls within the scope of the Act." *Id.* at 1218; *see also Caceres v. McCalla Raymer, Ltd. Liab. Co.*, 755 F.3d 1299, 1302 (11th Cir. 2014). "[A] communication need not make an explicit demand for payment in order to fall within the FDCPA's scope; rather, that a communication made specifically to induce the debtor to settle her debt will be sufficient to trigger the protections of the FDCPA." *Gburek v. Litton Loan Servicing LP*, 614 F.3d 380, 385 (7th Cir. 2010); *Grden v. Leikin Ingber &*

*Winters PC*, 643 F.3d 169, 173 (6th Cir. 2011) ("[F]or a communication to be in connection with the collection of a debt, an animating purpose of the communication must be to induce payment by the debtor… [A] letter that is not itself a collection attempt, but that aims to make a such an attempt more likely to succeed, is one that has the requisite connection.").

These letters aimed to make Fay's attempts to foreclose on Ellery's property more likely to succeed. She would have no choice but to pay the debt or allow the foreclosure to come to its natural end, because Fay repeatedly and systematically refused to explain why the offer did not represent an arm's-length transaction.

The district court stated that it "[did] not read any of the Denial Letters attached to the TAC as inducing or attempting to induce any debtor to settle her debt or make payment of any kind." (Doc. 41, p. 7). The district court's decision represents an impermissibly narrow interpretation of the statutory text and effectively removes the word "means" from 15 U.S.C. §§ 1692e and 1692e(10). Denying the short sale purchase offers with no explanation as to how to rectify any potential issues and refusing to work with Ellery to avoid foreclosure has no other logical purpose other than to induce her to settle her debt or abandon hope and allow the foreclosure to reach its conclusion.

No matter what the conduct is classified as, a mortgage servicer systematically denying the processing of a loss mitigation option, that it previously approved its

borrowers to participate in, based on a non-existent issue is an abusive practice that runs contrary to the spirit of the FDCPA.

## II. FAY'S FAILURE TO COMMUNICATE ACCURATE INFORMATION CONCERNING LOSS MITIGATION OPTIONS CONSTITUTES A COVERED ERROR PURSUANT TO 12 C.F.R. § 1024.35(b)

In the wake of the global financial crisis, Congress passed the Dodd-Frank Wall Street Reform and Consumer Protection Act to "protect consumers from abusive financial services practices." 124 Stat. 1376. Through three of RESPA's statutory provisions, Congress specifically authorized the Consumer Financial Protection Bureau (CFPB) to promulgate regulations like Regulation X, 12 C.F.R. §§ 1024.1, *et seq. See* 12 U.S.C. §§ 2605(j)(3) and 2605(k)(1)(E); *see also* 12 U.S.C. § 2617(a). Pursuant to this grant of authority, the CFPB created a framework for resolving certain errors made by servicers of federally related mortgages by amending Regulation X, and more specifically, enacting 12 C.F.R. § 1024.35.

These errors include "errors relating to allocation of payments, final balances for purposes of paying off the loan, or avoiding foreclosure, or other standard servicer's duties." 12 U.S.C. § 2605(k)(1)(C). The CFPB explained that "standard servicer duties are those typically undertaken by servicers in the ordinary course of business ... These standard servicer duties are not limited to duties that constitute 'servicing,' as defined in this rule." 78 Fed. Reg. 10696, 10739. It is undeniable that

a short sale application, and loss mitigation in general, is a method to avoid foreclosure and a standard servicer's duty.

12 C.F.R. § 1024.35(b) defines "error" to refer to, *inter alia*, the "[f]ailure to provide accurate information to a borrower regarding loss mitigation options and foreclosure, as required by § 1024.39." One of the requirements of 12 C.F.R. § 1024.39 is to promptly inform a borrower about the availability of loss mitigation options. 12 C.F.R. § 1024.39(a). Thus, providing inaccurate information concerning the availability of a loss mitigation option is a cover errored pursuant to 12 C.F.R. § 1024.35(b). *See Simmonds v. Nationstar Mortg. LLC*, No. 5:23cv2-MW/MJF, 2024 U.S. Dist. LEXIS 187028, at *13 (N.D. Fla. Sep. 24, 2024) ("Plaintiffs' NOEs concern Defendant's various missteps with their loss mitigation application. Therefore, their NOEs properly address one of the types of error enumerated by 12 C.F.R. § 1024.35(b)(7).").

In their notices of error, the Borrowers asserted covered errors pursuant to 12 C.F.R. § 1024.35(b)(7), claiming that Fay failed to provide accurate information regarding loss mitigation options, as required by 12 C.F.R. § 1024.39. (Doc. 32, ¶¶ 38, 57; Doc. 21-2, p. 2; Doc. 21-7, p. 2). The district court wholly failed to address this argument in its decision and instead focused on the "catch-all" provision of 12 C.F.R. § 1024.35(b)(11) and wrongly classified the Borrowers' notices of error as challenging Fay's loss mitigation decisions.

## III. FAY'S FAILURE TO IMPLEMENT THE SHORT SALE PURCHASE OFFERS CONSTITUTES A COVERED ERROR PURSUANT TO 12 C.F.R. § 1024.35(b)

The Borrowers submitted loss mitigation applications to Fay and Fay in turn evaluated the Borrowers' applications and approved them to participate in a short sale. (Doc. 21, ¶ 16; Doc. 21-2, p. 2). There is no question that Fay determined that the Borrowers were eligible for a short sale. The Borrowers have repeatedly stated that they are not challenging Fay's evaluation of their loss mitigation applications or the approval to participate in a short sale. The problem is properly classified as an error in the processing of a loss mitigation option, which, unlike a disagreement with the servicer's evaluation, is an error related to the servicing of a mortgage loan.

In addition to specific covered errors, 12 C.F.R. § 1024.35(b) also included a final catch-all category of errors that broadly covers "any other error relating to the servicing of a borrower's mortgage loan." 12 C.F.R. § 1024.35(b)(11). "Servicing" is defined as "receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan … and making the payments of principal and interest and such other payments with respect to the amounts received from the borrower as may be required pursuant to the terms of the loan." 12 U.S.C. § 2605(i)(3). The CFPB created the catch-all because it believed that "it is necessary and appropriate to achieve the purposes of RESPA to craft error resolution procedures that are sufficiently flexible to adapt to changes in the mortgage market and to encompass

the myriad and diverse types of errors that borrowers may encounter with respect to their mortgage loans." 78 Fed. Reg. 10696, 10744. The catch-all provision, however, does not encompass errors relating to a servicer's evaluation of a loss mitigation application:

> [T]he appeals process set forth in § 1024.41(h) provides an effective procedural means for borrowers to address issues relating to a servicer's evaluation of a borrower for a loan modification program. For this reason, and the reasons stated below with respect to loss mitigation practices, ***the Bureau declines to add a servicer's failure to correctly evaluate a borrower for a loss mitigation option as a covered error in the final rule***.

78 Fed. Reg. 10696, 10744 (emphasis added). The consideration of a short sale application is unquestionably connected with the servicer's receipt of payments from a borrower, as the acceptance of a short sale offer determines whether the servicer will be receiving future monthly payments. However, the district court wrongly determined that the Borrowers' notices of error concerned an error challenging an evaluation or "decision" of Fay, not an error concerning Fay's implementation of the Borrowers' short sale purchase offers.

12 C.F.R. § 1024.41(c) explains what an "evaluation" means in this context. Upon receiving a loss mitigation application, the servicer must evaluate the borrower's ***eligibility*** for all loss mitigation options available and then provide the borrower with a notice in writing stating which options would be offered to the borrower. 12 C.F.R. § 1024.41(c)(1)(i)-(ii); Official Interpretation No. 1 to 12 C.F.R.

§ 1024.41(c)(1). The CFPB has specifically addressed evaluations that result in a servicer offering a non-home retention option like a short sale:

> A servicer's offer of a non-home retention option may be conditional upon receipt of further information not in the borrower's possession and necessary to establish the parameters of a servicer's offer. For example, *a servicer complies with the requirement for evaluating the borrower for a short sale option if the servicer offers the borrower the opportunity to enter into a listing or marketing period agreement but indicates that specifics of an acceptable short sale transaction may be subject to further information obtained from an appraisal or title search*.

Official Interpretation No. 3 to 12 C.F.R. § 1024.41(c)(1). The "evaluation" ends when the servicer offers the borrower the opportunity to enter into a short sale.

The issue of challenging an evaluation versus challenging an implementation of a loss mitigation option came before the Second Circuit Court of Appeals in *Naimoli v. Ocwen Loan Servicing, LLC*, 22 F.4th 376 (2d Cir. 2022). In *Naimoli*, the servicer approved the borrower for a trial payment plan and the borrower successfully completed the trial payment plan. *Id.* at 379. The servicer refused to implement the promised permanent modification because it lost key documents that it required. *Id.* The contested issue was whether errors committed in handling of loan documents are "covered errors" under the catch-all provision or a challenge to the servicer's evaluation of the plaintiff's loss mitigation application. *Id.* at 382. The district court granted summary judgment, holding that the errors asserted by the borrower were "essentially challenges to the denial of her loan modification" and

such actions "did not relate to the receipt or making of payments" pursuant to the terms of the borrower's loan. *Id.* at 381.

The Second Circuit concluded that the district court erred in holding that the borrower's asserted errors were not covered by the catch-all provision:

> Moreover, the fact that Naimoli identified these errors while in pursuit of a loss mitigation option does not impair their connection to the servicing of her loan. All parties agree that a loan servicer's failure to properly evaluate a borrower for a loss mitigation option is not a covered error under § 1024.35(b). However, the fact that Naimoli was seeking loss mitigation does not mean that the errors she identified are unrelated to servicing. In fact, erroneous loss mitigation eligibility determinations are excluded under § 1024.35(b) not because loss mitigation is unrelated to servicing, but because when the CFPB issued its 2013 Final Rule, it determined that allowing consumers to enforce the loss mitigation standards set by the loan's owner against a servicer would perversely risk discouraging consumer-friendly loss mitigation standards. *See* 78 Fed. Reg. at 10817-18. It is therefore of no import that Naimoli's asserted errors accompanied a complaint about Ocwen's determination of her loss mitigation application. ***Furthermore, the errors Naimoli identified were correctable without overturning Ocwen's determination regarding her loss mitigation application***, because Ocwen could simply have located and recorded the documents without changing its decision regarding loss mitigation. Accordingly, the narrow exception to the catch-all provision, which excludes challenges to the merits of a servicer's loss mitigation determination, does not apply to the Naimoli's asserted errors.

*Id.* at 384-385 (emphasis added).

Likewise, the narrow exception does not apply to the instant matter. The error that the Borrowers' identified, that Fay improperly classified the short sale purchase offers as non-arm's-length transactions without any meaningful review, is correctable without overturning Fay's evaluation or decision to approve the

Borrowers to participate in short sales in the first place. It has no bearing on Fay's loss mitigation determination.

Despite the Borrowers' heavy reliance on *Naimoli*, the district court engaged in no analysis concerning the application of *Naimoli* and effectively ignored the Borrowers' arguments based on the case. Instead, the district court cited irrelevant case law that dismissed notice of error claims based on the borrowers' beliefs that they were not properly evaluated for a loss mitigation option.

In *Lynch v. Wells Fargo Bank, N.A.*, No. 18-23560- CIV-MARTINEZ-OTAZO-REYES, 2019 U.S. Dist. LEXIS 244643 (S.D. Fla. June 18, 2019), the borrower sent notices of errors challenging the denial of a loan modification and requesting specific reasons for the denial. The plaintiff claimed that the servicer "never properly evaluated [her] for a modification of her [l]loan." *Id.* at *2.

In the instant matter, the Borrowers do not claim that Fay failed to properly evaluate them for short sale eligibility and, to the contrary, the Borrowers agree with Fay's determination that they were eligible for a short sale. The parties disagree on whether the Borrowers met the "specifics of an acceptable short sale transaction." *See* Official Interpretation No. 3 to 12 C.F.R. § 1024.41(c)(1). Since the evaluation was already performed before the parties' dispute, *Lynch* is inapplicable.

The district court's reliance on *Jones v. Wells Fargo Bank, N.A.*, Civil Action No. ELH-18-8, 2018 U.S. Dist. LEXIS 155985 (D. Md. Sep. 12, 2018), is similarly

misplaced because it also involves challenging an evaluation of a loss mitigation application, not the "specifics of an acceptable short sale transaction" or a similar factual situation. *Sutton v. CitiMortgage, Inc.*, 228 F. Supp. 3d 254 (S.D.N.Y. 2017), which the Second Circuit distinguished in *Naimoli*, is factually distinguishable from the instant matter, because the borrower was "dissatisfied" with the modification she signed in October 2013 and was feeling "buyer's remorse." *Id.* at 259. Further, *Sutton* held that the borrower did not have a claim because she was not in default. *Id.* at 268-269.

The Borrowers asserted errors pursuant to 12 C.F.R. § 1024.35(b)(11), claiming that Fay failed to implement the short sale purchase offers based on a patently false claim that said offers were not the result of an arm's length transaction. (Doc. 32, ¶¶ 38, 57; Doc. 21-2, p. 2; Doc. 21-7, p. 2). As discussed, *supra*, the district court wrongly classified the Borrowers' notices of error as challenging Fay's loss mitigation decisions. (Doc. 41, p. 15) ("The TAC reflects that Plaintiffs' claims reflect a disagreement with Fay's determination, not an error in its processing, and, as such, this Court agrees with Fay that they do not trigger relief under Section 1024.35(a).").

The district court failed to construe the Complaint's factual allegations and exhibits in the light most favorable to the Borrowers and instead mischaracterized the parties' dispute. Instead of considering the contents of the Borrowers' notices of

error, the district court appears to have been swayed by Fay's characterization of the issues as stated in the Motion. This overlooks the substantive body of the notices of error which specified errors in the processing of the short sale offers, and did not, and would not, challenge any decision of Fay based on their eligibility for a loss mitigation option.

## CONCLUSION

Plaintiffs-Appellants Janice Ellery and Lilian Patino respectfully request that this Court reverse the decision of the district court granting Defendant-Appellee Fay Servicing, LLC's Motion to Dismiss and remand this matter for further proceedings.

**Date:** December 18, 2024

Respectfully submitted:

/s/ *Daniel M. Solar*
Daniel M. Solar, Esq.
(OH Bar No. 0085632)
(admitted *pro hac vice*)
**Dann Law**
15000 Madison Ave.
Lakewood, OH 44107
T: (216) 373-0539
F: (216) 373-0536
notices@dannlaw.com

Bruce Botsford, Esq.
(FL Bar No. 31127)
**Law Office of Bruce Botsford, P.A.**
1005 W State Road 84 # 472
Fort Lauderdale, FL 33315-2433
T: (954) 663-7002
F: (216) 373-0536

service@botsfordlegal.com
supportleader@botsfordlegal.com
botslaw@gmail.com

*Counsel for Plaintiffs-Appellants*
*Janice Ellery and Lilian Patino*

**15 U.S.C. § 1692. Congressional findings and declaration of purpose.**
**(e) Purposes.** It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses.

**15 U.S.C. § 1692a. Definitions.**
As used in this subchapter—

> **(2)** The term "communication" means the conveying of information regarding a debt directly or indirectly to any person through any medium.

**15 U.S.C. § 1692e. False or misleading representations.**
A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

> **(10)** The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

**12 U.S.C. § 2605. Servicing of mortgage loans and administration of escrow accounts.**
**(i) Definitions**
For purposes of this section:

> **(3) Servicing**
> The term "servicing" means receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan, including amounts for escrow accounts described in section 2609 of this title, and making the payments of principal and interest and such other payments with respect to the amounts received from the borrower as may be required pursuant to the terms of the loan.

**(j) Transition**

> **(3) Regulations and effective date**
> The Bureau shall establish any requirements necessary to carry out this section. Such regulations shall include the model disclosure statement required under subsection (a)(2).

**(k) Servicer prohibitions**

> **(1) In general**

A servicer of a federally related mortgage shall not—

> **(C)** fail to take timely action to respond to a borrower's requests to correct errors relating to allocation of payments, final balances for purposes of paying off the loan, or avoiding foreclosure, or other standard servicer's duties;
>
> **(E)** fail to comply with any other obligation found by the Bureau of Consumer Financial Protection, by regulation, to be appropriate to carry out the consumer protection purposes of this chapter.

## 12 U.S.C. § 2617. Authority of Bureau.
**(a) Issuance of regulations; exemptions**

The Bureau is authorized to prescribe such rules and regulations, to make such interpretations, and to grant such reasonable exemptions for classes of transactions, as may be necessary to achieve the purposes of this chapter.

## 12 C.F.R. § 1024.35. Error resolution procedures.
**(b) Scope of error resolution.** For purposes of this section, the term "error" refers to the following categories of covered errors:

> **(7)** Failure to provide accurate information to a borrower regarding loss mitigation options and foreclosure, as required by § 1024.39.
>
> **(11)** Any other error relating to the servicing of a borrower's mortgage loan.

## 12 C.F.R. § 1024.39. Early intervention requirements for certain borrowers.
**(a) Live contact.** Except as otherwise provided in this section, a servicer shall establish or make good faith efforts to establish live contact with a delinquent borrower no later than the 36th day of a borrower's delinquency and again no later than 36 days after each payment due date so long as the borrower remains delinquent. Promptly after establishing live contact with a borrower, the servicer shall inform the borrower about the availability of loss mitigation options, if appropriate, and take the actions described in paragraph (e) of this section, if applicable.

## 12 C.F.R. § 1024.41. Loss mitigation procedures
**(c) Evaluation of loss mitigation applications**—(1) *Complete loss mitigation application.* Except as provided in paragraph (c)(4)(ii) of this section, if a servicer receives a complete loss mitigation application more than 37 days before a foreclosure sale, then, within 30 days of receiving the complete loss mitigation application, a servicer shall:

> **(i)** Evaluate the borrower for all loss mitigation options available to the borrower; and

**(ii)** Provide the borrower with a notice in writing stating the servicer's determination of which loss mitigation options, if any, it will offer to the borrower on behalf of the owner or assignee of the mortgage. The servicer shall include in this notice the amount of time the borrower has to accept or reject an offer of a loss mitigation program as provided for in paragraph (e) of this section, if applicable, and a notification, if applicable, that the borrower has the right to appeal the denial of any loan modification option as well as the amount of time the borrower has to file such an appeal and any requirements for making an appeal, as provided for in paragraph (h) of this section.

**Official Interpretation**

41(c) Evaluation of loss mitigation applications.

41(c)(1) Complete loss mitigation application.

1. *Definition of "evaluation."* The conduct of a servicer's evaluation with respect to any loss mitigation option is in the sole discretion of a servicer. A servicer meets the requirements of § 1024.41(c)(1)(i) if the servicer makes a determination regarding the borrower's eligibility for a loss mitigation program. Consistent with § 1024.41(a), because nothing in section 1024.41 should be construed to permit a borrower to enforce the terms of any agreement between a servicer and the owner or assignee of a mortgage loan, including with respect to the evaluation for, or provision of, any loss mitigation option, § 1024.41(c)(1) does not require that an evaluation meet any standard other than the discretion of the servicer.

3. *Offer of a non-home retention option.* A servicer's offer of a non-home retention option may be conditional upon receipt of further information not in the borrower's possession and necessary to establish the parameters of a servicer's offer. For example, a servicer complies with the requirement for evaluating the borrower for a short sale option if the servicer offers the borrower the opportunity to enter into a listing or marketing period agreement but indicates that specifics of an acceptable short sale transaction may be subject to further information obtained from an appraisal or title search.

**Federal Register. Vol. 78. No. 31. Part II.**
**Mortgage Servicing Rules Under the Real Estate Settlement Procedures Act (Regulation X).**
**35(b) Scope of Error Resolution**

Section 6(e) of RESPA requires servicers to respond to "qualified written requests" asserting errors or requesting information relating to the servicing of a federally-related mortgage loan. Section 1463(a) of the Dodd-Frank Act amended RESPA to add section 6(k)(1)(C), which states that a servicer shall not "fail to take timely action to respond to a borrower's request to correct errors relating to allocation of payments, final balances for purposes of paying off the loan, or avoiding foreclosure, or other standard servicer's duties." The Bureau believes that standard servicer duties are those typically undertaken by servicers in the ordinary course of business. Such duties include not only the obligations that are specifically identified in section 6(k)(1)(C) of RESPA, but also those duties that are defined as "servicing" by RESPA, as implemented by this rule, as well as duties customarily undertaken by servicers to investors and consumers in connection with the servicing of a mortgage loan. These standard servicer duties are not limited to duties that constitute "servicing," as defined in this rule, and include, for example, duties to comply with investor agreements and servicing program guides, to advance payments to investors, to process and pursue mortgage insurance claims, to monitor coverage for insurance (e.g., hazard insurance), to monitor tax delinquencies, to respond to borrowers regarding mortgage loan problems, to report data on loan performance to investors and guarantors, and to work with investors and borrowers on options to mitigate losses for defaulted mortgage loans. n101

> n101 In providing these examples, the Bureau is making no judgment regarding whether they fall within the meaning of "servicing" as defined in this rule.

### 35(b)(11)

New § 1024.35(b)(11) includes a catch-all that applies error resolution procedures to errors relating to the servicing of a borrower's mortgage loan. As discussed above, the Bureau solicited comment regarding whether the list of covered errors should include a catch-all provision. The Bureau also requested comment as to whether to add additional specific errors to the list of errors under § 1024.35. In particular, the Bureau solicited comment regarding whether to include as an error a servicer's failure to correctly evaluate a borrower for a loss mitigation option.

[....]

As noted in the proposal, the Bureau believes that the appeals process set forth in § 1024.41(h) provides an effective procedural means for borrowers to address issues relating to a servicer's evaluation of a borrower for a loan modification program. For this reason, and the reasons stated below with respect to loss mitigation practices,

the Bureau declines to add a servicer's failure to correctly evaluate a borrower for a loss mitigation option as a covered error in the final rule.

The Bureau is, however, adding new § 1024.35(b)(11), which includes a catch-all that defines as an error subject to the requirements of § 1024.35 errors relating to the servicing of a borrower's mortgage loan. The Bureau believes that any error related to the servicing of a borrower's mortgage loan also relates to standard servicer duties. The Bureau also agrees with consumer advocacy commenters that the mortgage market is fluid and constantly changing and that it is impossible to anticipate with certainty the precise nature of the issues that borrowers will encounter. The Bureau, therefore, believes that it is necessary and appropriate to achieve the purposes of RESPA to craft error resolution procedures that are sufficiently flexible to adapt to changes in the mortgage market and to encompass the myriad and diverse types of errors that borrowers may encounter with respect to their mortgage loans. At the same time, the Bureau believes the costs and burdens created by having a more expansive definition of error are significantly mitigated because, as discussed above, under the final rule the requirements under § 1024.35 apply only to written notices of error. Moreover, the final rule adopts a process that is consistent with the existing process for responding to qualified written requests under RESPA section 6, which likewise includes a catch-all for servicing-related errors. The Bureau declines to add additional covered errors beyond the catch-all.

**124 Stat. 1376 - Dodd-Frank Wall Street Reform and Consumer Protection Act.**
To promote the financial stability of the United States by improving accountability and transparency in the financial system, to end ''too big to fail'', to protect the American taxpayer by ending bailouts, to protect consumers from abusive financial services practices, and for other purposes.

**CERTIFICATE OF SERVICE**

I hereby certify that on December 18, 2024, a copy of the foregoing Appellants' Opening Brief was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ *Daniel M. Solar*
Daniel M. Solar, Esq.
**Dann Law**
*Counsel for Plaintiffs-Appellants*
*Janice Ellery and Lilian Patino*